IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| PAMELA T. CAMERON,<br><br>          Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>          Defendant. | CASE NO. 1:23-cv-1371<br><br>DISTRICT JUDGE<br>PAMELA A. BARKER<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff Pamela Cameron filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In December 2020 and March 2021, Cameron filed applications for disability insurance benefits and supplemental security income, respectively,

alleging a disability onset date of December 2019,[1] and claiming she was disabled due to Parkinson's disease and hypertension. Tr. 10, 224–25, 232, 268. The Social Security Administration denied Cameron's application and her motion for reconsideration. Tr. 73–74, 91–92. Cameron then requested a hearing before an Administrative Law Judge (ALJ). Tr. 134.

In June 2022, an ALJ held a hearing, Tr. 28–58, and in September issued a written decision finding that Cameron was not disabled, Tr. 10–23. The ALJ's decision became final on May 17, 2023, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Cameron filed this action on July 14, 2023. Doc. 1. She asserts the following assignments of error:

> 1. Remand is required because the administrative law judge (ALJ) failed to either adopt limitations she found credible in the residual functional capacity (RFC) finding or to explain why she was omitting these admittedly credible limitations.
>
> 2. Remand is required because the ALJ failed to consider the vocational impact of Ms. Cameron's frequent falls due to Parkinson's disease.

Doc. 6, at 1.

---

[1]    "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

2

**Evidence**

*Personal and vocational evidence*

Cameron was born in 1957 and was 62 years old on her alleged disability onset date. Tr. 225. She has a bachelor's degree. Tr. 35, 269. She used to work as a city council person, social worker, and social services caseworker. Tr. 51–52, 258. She last worked in December 2019. Tr. 35–36.

*Relevant medical evidence*

Cameron didn't provide a recitation of the medical evidence or testimony at the hearing "[d]ue to the specific legal nature of the arguments presented." Doc. 6, at 2. Any medical or hearing evidence that she purports to rely on in the argument section of her brief is in violation of the Court's Initial Order, which states that "[a]ll facts relevant to the legal issues and discussion must be set forth in the *Facts* section" of the Plaintiff's brief. Doc. 3, at 3, ¶10. So Cameron has forfeited the Court's consideration of the evidence that she relies on in the *Arguments* section of her brief.

For context, the following discussion of the opinion evidence and hearing testimony is primarily taken from the Commissioner's brief.

In July 2021, Cameron saw Herschel Pickholtz, Ph.D., for a psychological consultative exam. Tr. 643. Cameron reported that she was unable to work because of "dealing with her Parkinson's disease," which was diagnosed in 2019. Tr. 649. Cameron stated that she had experienced some levels of depression—and two "bouts" in her life—before 2019. Tr. 645, 647.

She was not taking any psychiatric medication, was not in counseling, and experienced "no affective symptoms." Tr. 645. She hadn't experienced any depression "over the last 12 months." Tr. 647. Dr. Pickholtz performed sensorium and cognitive function testing and found that in all areas tested, Cameron fell into the average or "at least average" range. Tr. 648. Dr. Pickholtz opined that Cameron's ability to understand, remember, and carry out instructions for simple and more complex work activities "d[id] not reflect any impairment." Tr. 650. Cameron's ability to maintain attention and concentration were in the average range and her persistence and pace were "not impeded." Tr. 650. Cameron therefore had no impairment in her ability to perform one- to four-step tasks. Tr. 650. She had no "serious impairment" in her ability to relate to co-workers and others. Tr. 650. And her ability to handle work stress and pressure was "at worst, if at all," slightly impaired. Tr. 651.

*State agency opinions*[2]

In July 2021, psychological consultant Michelle Hoy-Watkins reviewed Cameron's record and opined that Cameron had no severe mental impairments. Tr. 76–79. Hoy-Watkins did not assess any mental-related

---

[2]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

4

residual functional capacity [RFC] limitations.[3] Tr. 81. In October 2021, Aracelis Rivera, Psy.D., reviewed Cameron's record and agreed with Hoy-Watkins's findings. Tr. 94–98.

*Hearing testimony*

Cameron was represented by counsel and testified at the administrative hearing. Cameron described her past work, Tr. 36–41, which the vocational expert classified as general office clerk, social worker, and social services case worker, Tr. 51–52.

The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Cameron could perform Cameron's past work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 52. The vocational expert answered that such an individual could perform Cameron's past work as a social worker and social services caseworker. Tr. 52–53.

---

[3] An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2023 (Ex. 8D).
>
> 2.   The claimant has not engaged in substantial gainful activity since December 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.   The claimant has the following severe impairments: Parkinson's disease; and hypertension (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),   404.1525,   404.1526,   416.920(d), 416.925 and 416.926).
>
> 5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can never climb ladders, ropes, or scaffolds; however, she can occasionally climb ramps and stairs and occasionally balance and crawl; and she can frequently stoop, kneel, and crouch. She must avoid even moderate exposure to wetness; and she must avoid moving machinery, unprotected heights, wet slippery surfaces, dangerous terrain, and uneven terrain except for the occasional climbing of ramps and stairs.
>
> 6.   The claimant is capable of performing past relevant work as a social worker, and as a social services case worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

> 7.  The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 10–23.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

> 1.  Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.
>
> 2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
> 3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
> 4.  What is the claimant's residual functional capacity and can the claimant perform past

relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial

evidence standard "is not high." *Id.* Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1.     The ALJ properly evaluated Cameron's mental limitations*

At step two, the ALJ listed Cameron's severe impairments—Parkinson's disease and hypertension. Tr. 13. Then the ALJ listed Cameron's non-severe impairments, including Cameron's "reactive depression." Tr. 13. The ALJ stated that Cameron's reactive depression "does not cause more than minimal limitation in the claimant's ability to perform basic mental work

activities." Tr. 14. The ALJ explained that to make this finding, she considered the four broad areas of mental functioning set out in the disability regulations and known as the "'paragraph B' criteria." Tr. 14 (citing 20 CFR, Part 404, Subpart P, Appendix 1); *see also* 20 C.F.R. §§ 404.1520a, 416.920a, *Evaluation of mental impairments*.[4] The ALJ found that Cameron had no limitations in two areas: understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace. Tr. 14–15. Cameron had a mild limitation in the remaining two areas: interacting with others and adapting or managing oneself. Tr. 14–15. The ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Tr. 15–16. *See* Soc. Sec. Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the

---

[4]     The consideration of the four broad areas of functioning is also referred to as the "psychiatric review technique." *See* Soc. Sec. Ruling 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

sequential evaluation process."). The ALJ then assessed Cameron's RFC, which did not include any mental limitations. Tr. 16.

Cameron argues that the ALJ erred because she failed to either (1) include in the RFC assessment the mild mental limitations she found at step two or (2) explain why she omitted them. Doc. 6, at 3.

First, an ALJ is not required to include in an RFC any of the ALJ's mild paragraph B criteria findings from step two. *See, e.g., Zingale v. Kijakazi*, No. 1:20-cv-2197, 2022 WL 824148, at *12 (N.D. Ohio Mar. 18, 2022) (collecting cases).[5] So the ALJ did not err in this respect.

---

[5]      *Zingale* cited:

*Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL 3587217 at *6 (S.D. Ohio Aug. 21, 2017) (agreeing with the Commissioner and finding that "[c]ontrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not require inclusion of mental limitations into the RFC.") (citing *Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253 at *14 (S.D. Ohio Aug. 24, 2015) ("In finding that Plaintiff's social functioning limitation are mild [sic], the ALJ determined that findings of more severe limitations in this domain by others ... were not credible. Thus, the ALJ permissibly declined to include social functioning limitations in the RFC."); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862 at *4–5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations)); *accord McDowell v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-00297-SL, 2021 WL 1911459, at *9 (N.D. Ohio Apr. 19, 2021) (Henderson, M.J.), *report and recommendation adopted*, 2021 WL 1909789 (N.D. Ohio May 12, 2021) ("That the ALJ found Claimant had mild limitations in regards to the functional areas does not mandate inclusion of limitations in the RFC."); *Taylor v. Berryhill*, No. 17-11444, 2018 WL 3887521 at * (E.D. Mich. July 5, 2018) ("Indeed, courts in this district have found that mild limitations [in the paragraph B criteria] do not require incorporation into an RFC assessment.") (internal quotations omitted). In fact, the Sixth Circuit has held that sometimes even those impairments that are deemed "severe" at Step Two do not always have to be included in the RFC. *See Griffeth v. Comm'r of*

In support of her argument, Cameron asserts that the ALJ's findings at step two "are then used in shaping the RFC" and cites 20 C.F.R. §§ 404.1520a and 416.920a. Doc. 6, at 3. Even if it could be said that the step two findings "shap[e]" an RFC,[6] Cameron hasn't identified where in these regulations it states that an ALJ must include the psychiatric findings from step two in the RFC assessment. And review of these regulations doesn't support Cameron's interpretation. Cameron observes that sections 404.1520a and 416.920a "use the term 'functional limitation' **eleven times** in discussing" the ALJ's evaluation of a claimant's mental impairment. Doc. 6, at 4 (bolded and underlined in the original). Nevertheless, sections 404.1520a and 416.920a state what an ALJ must do when determining whether a claimant has a medically determinable impairment and whether the impairment is severe. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The regulations do not state what an ALJ must do when assessing the RFC. Indeed, Cameron concedes that no legal authority supports her position. Doc. 6, at 8 (stating that "a host of courts have recognized that … where an ALJ decision does not include any mental

---

*Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (rejecting "the proposition that all impairments deemed 'severe' in step two must be included in the [ALJ's] hypothetical.").

2022 WL 824148, at *12; *see also Robertson v. Comm'r of Soc. Sec.*, No. 5:23-cv-866, 2023 WL 8357443, at *7 (N.D. Ohio Dec. 1, 2023).

[6]     Cameron doesn't explain what portion of the regulations she relies on for her statement that the ALJ's findings for non-severe mental impairments at step two "shap[e]" the ALJ's RFC assessment.

functional limitations in the RFC, the decision could still be affirmed so long as in the body of the RFC analysis the ALJ … explains why all mental functional limitations have been omitted.").[7]

Second, the ALJ is not required to explain why he or she omitted from the RFC the mild mental limitations that the ALJ found at step two. Rather, legal authority requires the ALJ when assessing an RFC to:

> consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

Soc. Sec. Ruling 96-8P, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *5 (S.S.A. July 2, 1996); *see Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). This is what the ALJ did here.

The ALJ considered Cameron's mental limitations when assessing the RFC. Tr. 19, 21–22. The ALJ evaluated Cameron's statements about the severity of her symptoms and found that Cameron's statements were

---

[7]    Cameron also states that "[t]he foregoing facts standing alone might not warrant a finding of legal error automatically" and offers a "harmless error" analysis. Doc. 6, at 5–8. But courts apply a *harmless error* analysis to determine whether an error is harmless such that it is not reversible error. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). Because Cameron hasn't shown that the ALJ erred, there is no *harmless error* analysis to undertake.

inconsistent with the record. Tr. 19. In support, the ALJ in part commented that neither the psychological consultative examiner nor the state agency reviewers assessed work-preclusive mental limitations. Tr. 19. The ALJ then evaluated the medical opinions in the record. Tr. 20. The ALJ commented that the state agency reviewers' "conclusion that the claimant's mental impairments were non-severe was consistent with the record as a whole, including the claimant's lack of mental health treatment throughout most of the period in question, her generally benign examination/mental status examination findings, and the findings and opinions of the consultative examiner." Tr. 21. "Overall," the ALJ wrote, their opinions were persuasive. Tr. 21.

Next the ALJ discussed Dr. Pickholtz's findings:

> the claimant's overall capacities to understand, remember, and carry out instructions for simple work activities and more complex work activities did not reflect any impairment (Ex. 5F/9-10). Her capacities for attention and concentration fell in the average range; her persistence and pace were not impeded; and her capacities to perform 1–4 step tasks did not reflect any impairment (*Id*.). Her capacities to relate to coworkers and others did not reflect any serious impairment (*Id*.). And her capacities to handle the stresses and pressures of work suggested slight impairment at worst, if at all (*Id*.).

Tr. 22. The ALJ explained why he found persuasive Dr. Pickholtz's findings, including that Dr. Pickholtz's "overall conclusion that [Cameron's] mental impairments did not appear to cause any significant limitations was consistent

with the corresponding examination, the claimant's lack of mental health treatment throughout the period in question, and her examination/mental status examination findings throughout the records."[8] Tr. 22. The ALJ said that Dr. Pickholtz's opinions weren't more persuasive because some of them "were somewhat vague and imprecise," explaining:

> He did articulate that the claimant's limitations as it related to the four areas of the paragraph B criteria, and the overall conclusion that the claimant had no significant limitations within the areas of understanding, remembering, or applying information, or concentrating, persisting, or maintaining pace was consistent with the record as a whole. However, the opinion that the claimant did not appear to have any "serious impairment" in the area of interacting with others is vague and nonspecific. And the statement that the claimant had slight impairment, if at all in the area of adapting or managing oneself was also vague and nonspecific. Overall, the opinions of the consultative examiner were mostly persuasive.

Tr. 22. The ALJ concluded,

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the lack of opinion evidence from acceptable medical sources indicating that the claimant was disabled, or that she had greater limitations than those found in this decision; the claimant's treatment history and response to treatment for her multiple impairments throughout the period in question; the objective findings; and the record as a whole.

---

[8]     Earlier in her decision, the ALJ detailed Cameron's allegations about her mental limitations and Cameron's objective exam findings at various appointments and at the consultative exam. Tr. 14–15. Cameron doesn't challenge any of these factual findings.

Tr. 22. So the ALJ considered Cameron's mental limitations when evaluating Cameron's RFC and complied with the pertinent requirements. *See* Soc. Sec. Ruling 96-8P, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

Cameron submits that the ALJ is required to "affirmatively explain[] why all mental functional limitations have been omitted [from the RFC] despite the prior [step-two] findings."[9] Doc. 6, at 8. She cites five pages of cases to support her assertion that the ALJ must "affirmatively explain" such a finding, but none of the cases are binding precedent and only one of them is from a district court in the Sixth Circuit.[10] *See id.* at 8–12.

Moreover, the ALJ *did* "affirmatively explain" why she omitted from the RFC all mental functional limitations "despite the prior [step-two] findings."

---

[9]    In her reply brief, Cameron flips her argument around and argues, for the first time, that the ALJ erred because her RFC explanation "focused on the severity of Ms. Cameron's mental impairments rather than on their impact on her ability to perform work-related activities." Doc. 9, at 2. Not only is this argument improper because it was raised for the first time in a reply brief, *see United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006), but it fails because the regulations permit the ALJ to consider the four broad areas of functioning when assessing an RFC. *See* 20 §§ C.F.R. 404.1545(c), 419.925(c).

[10]    The case within the Sixth Circuit is *Richardson v. Saul*, 511 F.Supp.3d 791, 798–99 (E.D. Ky. 2021). Doc. 6, at 9. In *Richardson*, the court found that the ALJ erred by not explaining why the RFC contained no mental limitations despite the ALJ assigning "great weight" to an opinion assessing the claimant with "'mild to moderate' mental limitations." 511 F.Supp.3d at 799. Here, by contrast, the ALJ provided a mental RFC explanation and no medical source opined that Cameron had *moderate* mental limitations. *See* Tr. 78, 95 (state agency reviewers' opinions assessing "none" or "mild" limitations).

Doc. 6, at 8. The ALJ discussed Dr. Pickholtz's opinion "as it related to the four areas of the paragraph B criteria." Tr. 22. The ALJ said that Dr. Pickholtz's opinion that Cameron had no limitations in two areas of functioning was persuasive. Tr. 22. Dr. Pickholtz's opinion that Cameron had limitations in the two remaining areas of functioning was not persuasive because the limitations were "vague and nonspecific." Tr. 22. The ALJ also explained why she found persuasive Dr. Pickholtz's more specific limitations that tracked RFC language—Cameron could perform complex and one- to four-step tasks. Tr. 22. In other words, the ALJ explained why she omitted from the RFC mental limitations based on the four broad areas of functioning *and* a more detailed RFC assessment.

In support of her argument, Cameron relies heavily on *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013), Doc. 6, at 4, 8, 13–14, and urges the Court to "adopt th[at] well-reasoned published decision of the Tenth Circuit." *Id*. at 13. Aside from the fact that *Wells* is not binding Sixth Circuit precedent, it doesn't support Cameron's position. In *Wells*, the ALJ assessed as non-severe at step two the claimant's mental impairment, finding that Wells had no more than mild limitations in the four broad areas of functioning. 727 F.3d at 1068. But then the ALJ stated that "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment" and "reiterated his conclusion that the mental impairments were non-severe," which, the court found, "suggests that the ALJ may have relied on his step-two findings to

17

conclude that Ms. Wells had no limitation based on her mental impairments." *Id.* at 1069. "If so," the court stated, "this was inadequate under the regulations and the Commissioner's procedures." *Id.* Here, unlike in *Wells*, the ALJ made clear that her step two findings were separate from her RFC findings. Tr. 15–16, 22.

> The *Wells* court then wrote:

> > Notwithstanding his previous statement about step-two findings, the ALJ did—as previously mentioned—separately discuss Ms. Wells' mental impairments to some degree, when assessing her credibility as part of his RFC determination. This discussion, though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of Ms. Wells' ability to complete various job functions as part of determining her RFC. *But we need not determine whether the discussion was procedurally adequate*, because the ALJ's conclusions on this point were not supported by substantial evidence.

727 F.3d at 1069 (emphasis added). The court identified the factual errors in the ALJ's characterization of Well's mental impairments and relied on those errors as the basis for its holding. *Id.* at 1069–71. Here, Cameron has not contested the ALJ's factual findings. Indeed, she expressly said that she is not challenging the ALJ's factual findings:

> > Lest the Agency misstate the specific legal issue, Plaintiff will make it clear. This issue has nothing to do with how the ALJ weighed the medical evidence or what medical opinions and other facts were considered. Rather, the issue is solely whether it was legal error for the ALJ to omit Plaintiff's proven mental functional limitations from the RFC finding without explanation.

Doc. 6, at 5, n.2. So *Wells*, which based its relevant holding on the ALJ's erroneous factual findings, 727 F.3d at 1069–71, does not support Cameron's purely legal position.

Notably, Cameron alleged disability based on her Parkinson's disease and hypertension. Tr. 268. At the administrative hearing, neither Cameron nor her attorney mentioned Cameron's depression. Tr. 30–50. Cameron's attorney only mentioned Cameron's physical impairments to the ALJ in his opening statement, Tr. 34, and his pre-hearing brief, Tr. 321–22, and in his brief to the Appeals Council, Tr. 335–36. Meanwhile, Cameron told Dr. Pickholtz that she hadn't had any depressive symptoms for the last 12 months and only two "bouts of depression in her life," both occurring before 2019. Tr. 645, 647. She said that were it not for her Parkinson's disease, she would be working. Tr. 650. Given the scant evidence of Cameron's depression in the record, it cannot be said that the ALJ's evaluation was improper; rather, there was simply little evidence for the ALJ to evaluate. *See, e.g., Nejat*, 359 F. App'x at 577 ("Given Nejat's failure to list obesity in his application and the scant evidence of obesity in the record, the ALJ properly evaluated this alleged condition") (citing *Pena v. Sec'y of Health & Human Servs.*, 76 F.3d 906, 909 (8th Cir. 1996)) (an ALJ "is under 'no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'") (citation omitted); *Williams v. Berryhill*, No. 1:18-cv-77, 2019 WL 2997838, at *2 (W.D. Ky. July 9, 2019).

19

2.    *The ALJ properly evaluated Cameron's risk of falls*

Cameron argues that the ALJ failed to consider "the vocational impact" of Cameron's risk of falls. Doc. 6, at 15. Cameron complains that the ALJ "did not address the vocational expert's testimony regarding fall risk and accommodation." *Id.* She asserts that the vocational expert "initially testified that an individual who 'was also a fall risk and maybe would fall one or two times a week' could perform Ms. Cameron's past work as a social worker or social services case worker," but then "added that 'if the personnel is documented that this specific employee is going to be a fall risk then there would have to be possibly some kind of an accommodation or ergonomic assistance implemented by the employer.'" *Id.* (citing Tr. 53–54).

As an initial matter, Cameron's argument is forfeited because Cameron didn't include the vocational expert testimony in the fact section of her brief in violation of the Court's Initial Order. *See* Doc. 3, at 3, ¶10.

Even if the Court considers Cameron's argument, it fails on the merits. Cameron omits the vocational expert's equivocal follow-up comment:

> But that is—I don't see that—I would need definitely some, you now, the fall risk if it's just a risk or is it occasionally occurring or is it—I would need some kind of factors in how is—the fall risk does it occur or is this just communicated … by the employee?

Tr. 54. There were no further questions about the risk of falls. So Cameron hasn't shown that the testimony supports Cameron's reading of the vocational expert's statements about an accommodation.

In any event, the ALJ discussed Cameron's Parkinson's disease and the related evidence of Cameron's allegation of falls and the risk of falls. *See* Tr. 17–18 (ALJ commenting that Cameron's treating doctor said that Cameron "significantly improved" with medication, including that her reported falls decreased to once every three months), Tr. 18 (ALJ noting that in July 2020 Cameron denied that in the past year she experienced two falls or one fall with an injury and denied using an assistive device; in January 2021 Cameron's doctor "encouraged [Cameron] to either increase her [medication] dos[age]" or add a new medication, which Cameron declined to do; in November 2021 Cameron reported falling "only once or twice in the past six months" and she was not compliant in taking her medication). The ALJ assessed an RFC that included environmental restrictions due to Cameron's "history of imbalance and falls." Tr. 19 (explaining that Cameron "must avoid even moderate exposure to wetness, and she must avoid moving machinery, unprotected heights, wet slippery surfaces, dangerous terrain, and uneven terrain except for the occasional climbing of ramps and stairs"). The ALJ cited Cameron's inconsistent statements in the record about "issues with imbalance and falls," including Cameron's testimony and physical therapy and neurology records. Tr. 20. And the ALJ explained why she found persuasive the state agency reviewers' RFC assessment, including how it accounted for Cameron's history of falls. Tr. 21–22. Cameron doesn't challenge any of these findings.

21

Because the ALJ's RFC doesn't include a separate limitation about a risk of falls, the vocational expert's testimony about an individual with a risk-of-falls limitation is irrelevant. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (the ALJ is only required to include in the hypothetical question to the vocational expert the limitations that the ALJ assessed in the RFC, along with the claimant's age, education, and work experience).

## Conclusion

For the reasons explained above, I recommend that the Commissioner's decision be affirmed.


Dated: January 18, 2024


 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge




## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).